IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HOMEALERT CORPORATION, a )
Delaware corporation, )
 )
       Plaintiff, )
 )
   vs. ) Civil Action No. 08-912
 )
CONCERT COMPANY, d/b/a CCI )
CONTROLS, a California )
corporation, )
 )
       Defendant. )

**MEMORANDUM**

## I. INTRODUCTION

In this diversity action, Plaintiff, HomeAlert Corporation ("HomeAlert"), asserts a claim against Defendant, Concert Company, d/b/a CCI Controls ("CCI"), for breach of contract. Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56.[1] For the reasons

---

[1] On July 7, 2008, CCI filed a motion to dismiss HomeAlert's complaint for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6). In support of its motion to dismiss, CCI submitted an agreement executed by CCI and a third party which was not the basis of the breach of contract claim asserted by HomeAlert against CCI in this case. Under the circumstances, the Court concluded that the agreement could not be considered in ruling on CCI's motion to dismiss. However, rather than denying CCI's motion to dismiss without prejudice, the Court converted the motion to dismiss into a motion for summary judgment under Fed.R.Civ.P. 56, and the parties were given an opportunity to submit further briefs and evidentiary materials. Subsequently, HomeAlert filed a cross-motion for summary judgment.

1

set forth below, CCI's motion will be denied and HomeAlert's cross-motion will be granted in part and denied in part.

## II. UNDISPUTED FACTS

On or about May 25, 2001, CCI entered into a Development, Manufacturing and Marketing Agreement (the "DMM Agreement") with Dominion Products and Services, Inc. ("Dominion"). Pursuant to the DMM Agreement, CCI and Dominion agreed to cooperate in the development and distribution of an alarm system to be called the 8000 Series System. In furtherance of the DMM Agreement, Dominion agreed to invest a total of approximately $2,000,000.00 in the project at established intervals over a period of two years, and the principals of CCI established HomeAlert, a separate corporate entity, to manage and market the 8000 Series System. (Motion to Dismiss, ¶¶ 4-7).

In 2001, Dominion made three capitalization payments to CCI under the DMM Agreement totaling $764,000.00. Subsequently, Dominion exercised its option to terminate the DMM Agreement and requested repayment of the $764,000.00 in capitalization provided to CCI. In December 2001, Dominion and CCI agreed to an extension of time for CCI to repay the debt owed to Dominion. Under this agreement, CCI's payments to Dominion were to commence in January 2004. (Motion to Dismiss, ¶¶ 8-10).

In August 2002, CCI found it necessary to restructure its core financing. As part of the refinancing efforts, CCI and

2

Dominion restated the terms and conditions of the debt owed to Dominion by CCI. Thereafter, on September 30, 2002, Dominion and CCI entered into a refinancing agreement pursuant to which CCI's debt to Dominion in the amount of $764,000.00 was divided into two separate secured instruments. The first secured instrument was a $600,000.00 note secured by CCI's business personalty, and the second secured instrument was a $164,000.00 note secured by a deed of trust. Principal and interest payments on the two secured notes were to be made by CCI on a monthly basis for four years beginning January 2005. On September 30, 2002, CCI and Dominion also entered into a Security Agreement in which CCI agreed to grant a continuing security interest in certain collateral to secure its obligations to Dominion. (Complaint, Exhs. A, B, C and D, Motion to Dismiss, ¶¶ 11-13). Despite the terms of the secured notes, CCI failed to commence monthly payments of principal and interest to Dominion in January 2005.

On September 1, 2005, Dominion entered into two agreements relating to the secured notes on which CCI had defaulted. The first agreement was an Assignment, Settlement and Release Agreement with HomeAlert (the "Dominion-HomeAlert ASR Agreement"), the corporation established by CCI's principals to manage and market the 8000 Series System. Pursuant to the Dominion-HomeAlert ASR Agreement, Dominion assigned the secured notes, as well as the Security Agreement executed by Dominion and

3

CCI on September 30, 2002, to HomeAlert in exchange for certain benefits to be conferred upon Dominion. (Complaint, Exh. D).

The second agreement executed by Dominion on September 1, 2005 regarding the secured notes was an Assignment, Settlement and Release Agreement with CCI (the "Dominion-CCI ASR Agreement"). Among other things, in the Dominion-CCI ASR Agreement, CCI acknowledged (a) its default on the secured notes and unrealistic prospect of satisfying them, (b) Dominion's assignment of, or willingness to assign, the secured notes and Security Agreement to HomeAlert, (c) HomeAlert's acceptance of, or willingness to accept, assignment of the secured notes and Security Agreement from Dominion in consideration for the benefits to be conferred upon HomeAlert under this agreement, (d) Dominion's right to assign the secured notes and Security Agreement, and (e) its acceptance of the assignment of the secured notes and Security Agreement to HomeAlert without recourse against Dominion. (Motion to Dismiss, Exh. A, pp. 1-2).

On March 27, 2006, the Vice President of Dominion executed a document titled "CORPORATION ASSIGNMENT OF INTEREST(S) UNDER A SECURED NOTE" for each secured note assigned to HomeAlert on September 1, 2005. These documents were attached to a UCC Financing Statement Amendment that was filed by HomeAlert on June 5, 2006 to record the assignment of the secured notes from Dominion. (Complaint, Exh. E).

4

Despite a demand for payment, CCI has refused to make any payments to HomeAlert under the secured notes. (Cross-Motion for Summary Judgment, Affidavit of Michael Urness).

### III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A court "can grant summary judgment on an issue of contract interpretation if the contractual language being interpreted is subject to only one reasonable interpretation." Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 164-65 (3d Cir.2001). See also LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1073 (3d Cir.1996)("Where ... a contract is unambiguous, it is appropriate for the court to determine its meaning as a matter of law at the summary judgment stage.").

### IV. LEGAL ANALYSIS[2]

Despite the execution of the Dominion-HomeAlert ASR Agreement and the Dominion-CCI ASR Agreement on the same day, September 1, 2005, CCI contends that its obligations on the

---

[2]There is no dispute that Pennsylvania law applies in this diversity case.

5

secured notes were discharged prior to their assignment to HomeAlert, and that, therefore, HomeAlert may not recover from CCI for breach of contract based on its failure to make payments on the secured notes.[3] After consideration, the Court finds CCI's position untenable.

**Effective Date of Assignment of Secured Notes**

When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. See Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co., 588 Pa. 470, 481, 905 A.2d 462, 468 (2006). With respect to the effective date of Dominion's assignment of the secured notes to HomeAlert, the Dominion-HomeAlert ASR Agreement states:

**ASSIGNMENT, SETTLEMENT AND RELEASE AGREEMENT**

This ASSIGNMENT, SETTLEMENT AND RELEASE AGREEMENT (this "Agreement"), dated as of September 1, 2005 (the "Effective Date") is by and among Dominion Products and Services, Inc., a Delaware corporation with offices at 120 Tredegar Street, Richmond, Virginia ("Dominion") and HomeAlert Corporation, a Delaware corporation with offices at 4600 South Syracuse Street, Suite 525, Denver, Colorado ("HomeAlert")....

\* \* \*

1. **Assignment of the Notes and Security Agreement**. Dominion assigns to HomeAlert and HomeAlert accepts assignment from

---

[3]Specifically, "it is CCI's position that although the HomeAlert Corporation accept (sic) assignment of the two notes from Dominion it did so after Dominion had released CCI from any and all past and present obligations, whether in contract or in tort and therefore, CCI owes no funds, in any manner whatsoever, to the HomeAlert Corporation." (Brief in Support of Motion to Dismiss, p. 6).

6

Dominion of the Notes and the Security Agreement as of the Effective Date.

* * *

(Complaint, Exh. D, pp. 1-2).

Ignoring the above-quoted clear and unambiguous language in the Dominion-HomeAlert ASR Agreement regarding its effective date and the intent of the parties to effectuate an assignment of the secured notes on that date, CCI asserts that "a formal assignment" of the secured notes to HomeAlert did not occur until March 27, 2006, which, as noted previously, corresponds with the date a document titled "CORPORATION ASSIGNMENT OF INTEREST(S) UNDER A SECURED NOTE" was prepared by Dominion's Vice President for each secured note for purposes of the UCC Financing Statement Amendment filed by HomeAlert on June 5, 2006 to perfect its lien against CCI. Not surprisingly, CCI has failed to cite any legal authority to support this assertion, and the Court can find none. Under the circumstances, the Court finds as a matter of law that Dominion's assignment of the secured notes to HomeAlert was effective as of September 1, 2005.

**Mutual Releases in Dominion-CCI Agreement**

With respect to the interpretation of general releases, the district court in <u>Bickings v. Bethlehem Lukens Plate</u>, 82 F.Supp.2d 402 (E.D.Pa.2000), stated:

* * *

Under Pennsylvania law, general releases are interpreted by the rules of contract construction. See, e.g., Evans v. Marks, 421 Pa. 146, 218 A.2d 802 (1966); Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885 (3d Cir.1975). In construing a release, the foremost consideration is the intention of the parties. See, Three Rivers Motors, 522 F.2d at 892. The intention of the parties is gathered from (1) the language of the release and (2) the circumstances surrounding the execution of the release. See, e.g., Wenger v. Ziegler, 424 Pa. 268, 271, 226 A.2d 653 (1967).

First, a court must look to the language of the release. In examining the language of a release, the terms of the release will be given their ordinary meaning unless a different meaning was clearly intended. See id. In addition, the language of the release must be viewed in the context of the entire document. See, e.g., Harrity v. Medical College of Pennsylvania Hosp., 439 Pa.Super. 10, 21, 653 A.2d 5 (1994). Each part of the release must be given effect. See id. Therefore, terms in one section of the contract should not be interpreted to nullify or conflict with other terms. See, e.g., Flatley v. Penman, 429 Pa.Super. 517, 521, 632 A.2d 1342 (1993). If one clause appears to conflict with another, the clauses should be construed, if possible, as consistent with one another. see id.

Next, in determining the intent of the parties, a court must inquire into the circumstances surrounding the execution of the release. See, e.g., International Organization Master, Mates and Pilots of America Local No. 2 v. International Organization Masters, Mates and Pilots of American Inc., 497 Pa. 102, 112-13, 439 A.2d 621 (1981). The surrounding circumstances clarify the intention of the parties and identify "matters which may be fairly said to have been within the contemplation of the parties when the release was given." ...

82 F.Supp.2d at 405-06.

The release provision in the Dominion-CCI Agreement on which CCI relies to support the contention that its obligations to Dominion on the secured notes were discharged prior to the assignment of the secured notes to HomeAlert provides:

8

* * *

2. **Mutual Releases**. In consideration of the execution of this Agreement and for the consideration set forth herein, each Party, for itself, and on behalf of its affiliates, present and past officers, directors, shareholders, partners, limited partners, employees, representatives, agents, attorneys, predecessors, successors, parent, subsidiary and affiliated corporations and entities, and assigns (collectively "Releasors"), does hereby completely and generally release, remise, acquit and forever discharge the other Party and its present and past officers, directors, shareholders, partners, limited partners, employees, representatives, agents, attorneys, predecessors, successors, parent, subsidiary and sibling corporations and entities, and assigns (collectively "Releasees") of and from any and all past and present claims, demands, obligations, actions, causes of action, rights, damages, expenses and requests for compensation or payment of any nature whatsoever, whether based on tort, contract or any other legal theory of recovery, and whether for compensatory or punitive damages or other relief or damage, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated that arose on or before the date this Agreement becomes fully executed that Releasors or any of them ever jointly or individually had or now has or have against Releasees, or any of them, relating to, in connection with and/or arising out of any agreement to which each of them is a party, and/or any termination of any such agreement. Upon execution of this Agreement, **except for the obligations arising out of this Agreement**, the Parties generally and specifically agree that by the foregoing releases, they discharge and release all claims, demands, liabilities, causes of action, of every nature, character, or description whatsoever, whether known or unknown, suspected or unsuspected, anticipated or unanticipated, which either Party has ever had, now has, or may have, shall and may later have or acquire, arising out of or concerning or pertaining to or connected with any agreement to which each of them is a party.... (emphasis added).

* * *

(Motion to Dismiss, Exh. A, pp. 2-3).

In arguing that this release provision discharged its obligations on the secured notes, CCI asserts the following:

9

"Had it been Dominion and CCI's intent to except the Secured Notes from the effect of the clear, broad and general terms of the Release contained in the Dominion-CCI Agreement, Dominion and CCI could have easily included appropriate language in the Release pertaining to the Notes under which Plaintiff now alleges Defendant is obligated. Obviously, the failure to specifically except the notes is evidence that Dominion intended to discharge Defendant's obligations under the same." (Reply Brief, p. 3).

Contrary to this argument, the release provision does contain explicit language excluding CCI's obligations on the secured notes from the release. Specifically, CCI fails to acknowledge the portion of the release provision which states "except for the obligations arising out of this Agreement," and CCI's obligations under the Dominion-CCI ASR Agreement included its acknowledgment of Dominion's assignment of the secured notes to HomeAlert, its acknowledgment of Dominion's right to make such an assignment, and its acceptance of the assignment to HomeAlert without recourse against Dominion.

Moreover, as noted by HomeAlert, if it was the intent of the parties to the Dominion-CCI ASR Agreement to discharge CCI's obligations under the secured notes, any language relating to an assignment of those notes to HomeAlert would have been meaningless. (Brief in Support of Cross-Motion for Summary Judgment, p. 12). Such an interpretation is impermissible under Pennsylvania law. See, e.g., Girard Trust Bank v. Life Ins. Co. of North America, 243 Pa.Super. 152, 158, 364 A.2d 495, 498 (1976), citing Stern Enterprises, Inc. v. Penn State Mut. Ins.

Co., 223 Pa.Super. 410, 302 A.2d 511 (1973)(It is true that contract terms will not be construed in such a manner so as to render them meaningless.).

In addition, when, as here, two contracts are executed at the same time and involve the same transaction, they should be construed as a whole. See <u>Sanford Investment Co., Inc. v. Ahlstrom Machinery Holdings, Inc.</u>, 198 F.3d 415, 421 (3d Cir. 1999)("If the court finds that the contracts pertain to the same transaction, the fact that the signatories are different does not mean that this rule does not apply."); <u>Huegel v. Mifflin Construction Co., Inc.</u>, 2002 Pa.Super. 94, 796 A.2d 350, 354-55 (2002), quoting <u>Neville v. Scott</u>, 182 Pa.Super. 448, 127 A.2d 755, 757 (1957)("Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other.").

Clearly, the Dominion-HomeAlert ASR Agreement and the Dominion-CCI ASR Agreement were part of the same transaction. All of the parties to the agreements were involved in some aspect of the development and distribution of the alarm system to be called the 8000 Series System; the agreements, which are

substantially similar,[4] were executed and became effective on the same date; and CCI specifically acknowledged in the Dominion-CCI ASR Agreement that a separate agreement, such as the Dominion-HomeAlert ASR Agreement, would be executed to assign the secured notes to Home-Alert.[5] To interpret the Dominion-CCI ASR

---

[4] As noted by HomeAlert, the Dominion-CCI ASR Agreement and the Dominion-HomeAlert ASR Agreement contain identical recitals regarding the circumstances leading to CCI's execution of the secured notes and Security Agreement, Dominion's willingness to assign the secured notes and Security Agreement to HomeAlert, and HomeAlert's willingness to accept assignment of the secured notes and Security Agreement from Dominion with one exception. The last recital in the Dominion-CCI ASR Agreement concludes with the following language that is not in the Dominion-HomeAlert ASR Agreement: "and CCI acknowledges Dominion's right to so assign the Notes and Security Agreement." (Brief in Support of Cross-Motion for Summary Judgment, pp. 9-10).

[5] In this connection, the Dominion-CCI ASR Agreement states:

**ASSIGNMENT, SETTLEMENT AND RELEASE AGREEMENT**

This ASSIGNMENT, SETTLEMENT AND RELEASE AGREEMENT (this "Agreement"), dated as of September 1, 2005 (the "Effective Date") is by and among Dominion Products and Services, Inc., a Delaware corporation with offices at 120 Tredegar Street, Richmond, Virginia ("Dominion") and Concert Company d/b/a CCI Controls, a California corporation with offices at 5052 Cecelia Street, South Gate, CA 90280 ("CCI")....

\*    \*    \*

**1.    Assignment of the Notes and Security Agreement.**
Dominion has assigned or will assign to HomeAlert and HomeAlert has accepted or will accept assignment from Dominion of the Notes and Security Agreement under a separate agreement. CCI acknowledges this assignment, Dominion's right to make such an assignment and accepts the assignment to HomeAlert Corporation without recourse against Dominion.

\*    \*    \*

Agreement, when considered in conjunction with the Dominion-HomeAlert ASR Agreement, as evidencing an intent on the part of Dominion to discharge CCI's obligations under the secured notes is simply unreasonable.[6]

## V. CONCLUSION

In sum, the Court concludes that it is clear from the language of the Dominion-CCI Agreement that it was the intent of Dominion and CCI to assign the secured notes to HomeAlert and release any other claims they may have had against each other. Accordingly, HomeAlert is entitled to a judgment in its favor as a matter of law on CCI's liability on the secured notes. The Court further concludes that the issue of damages may not be resolved on summary judgment. As a result, HomeAlert's motion for summary judgment on damages will be denied.

*William L. Standish*
William L. Standish
United States District Judge

Date: February 12, 2009

---

(Motion to Dismiss, Exh. A, pp. 1-2).

[6] As noted by HomeAlert, "[o]ne need to look no further than the title of the "Assignment, Settlement and Release" agreements to understand the express purpose of the agreements was to effectuate an assignment." (Brief in Support of Cross-Motion for Summary Judgment, p. 12).